IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:11-CV-88-D

| | | |
|---|---|---|
| MARILYN TOMASSETTI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AMENDED MEMORANDUM** |
| | ) | **AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Marilyn Tomassetti ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 22, 24). Both parties submitted a memorandum in support of their respective motions (D.E. 23, 25), and plaintiff filed a reply (D.E. 27). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 26). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

I.     **BACKGROUND**

A.     **Case History**

Plaintiff filed an application for DIB on 29 March 2007 alleging a disability onset date of 22 April 2005. Transcript of Proceedings ("Tr.") 37. Her application was denied initially and again upon reconsideration, and a request for hearing was timely filed. Tr. 108. On 10

September 2009, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 56-89. The ALJ issued a decision denying plaintiff's claim on 29 November 2009. Tr. 37-51. Plaintiff timely requested review by the Appeals Council. Tr. 33. The Appeals Council denied the request for review on 11 March 2011. Tr. 1-4. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 5 May 2011, pursuant to 42 U.S.C. § 405(g). (Compl. (D.E. 1)).

### B.     Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A person is under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* (d)(2)(A).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination

2

of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C.    Findings of the ALJ

Plaintiff was 45 years old on the alleged onset date of disability and 50 years old on the date of the administrative hearing. *See* Tr. 50, 60. She has a high school education and past work as warehouse shipping and receiving clerk/supervisor. Tr. 50 ¶¶ 6, 8.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity from her alleged disability onset date of 22 April 2005. Tr. 39 ¶ 2. At step two, the ALJ found that plaintiff has the following medically determinable impairment that is severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): a right ankle injury. Tr. 39 ¶ 3. She found specifically that plaintiff's purported mental impairments, including somatoform disorder, pain disorder, and depression, were not severe. Tr. 40 ¶ 3. At step three, the ALJ found that plaintiff's impairments do not meet or medically equal any of the listings. Tr. 41 ¶ 4.

The ALJ determined that plaintiff has the RFC to perform a limited range of light work.[1] Tr. 41 ¶ 5. Specifically, she found plaintiff able to: sit for 6 to 8 hours in an 8-hour workday with normal breaks; stand for 1 hour at a time for 6 hours in an 8-hour workday; walk for 30 minutes at a time for 6 hours in an 8-hour workday; lift and carry 20 pounds occasionally and 10 pounds frequently; occasionally perform postural activities (*i.e.*, climbing, balancing, stooping, kneeling, crouching, crawling), but subject to the avoidance of any climbing of ladders, ropes, and scaffolds, and the avoidance of unprotected heights and hazards; and perform simple, routine, repetitive tasks ("SRRTs"). Tr. 41 ¶ 5. At step four, the ALJ found plaintiff not capable of performing her past relevant work as a warehouse shipping and receiving clerk/supervisor. Tr. 50 ¶ 6.

At step five, the ALJ accepted the testimony of a vocational expert ("VE") and found that there are jobs in the national economy existing in significant numbers that plaintiff could perform, including cashier, small parts assembler, and sorter. Tr. 51 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 51 ¶ 11.

---

[1] For the definition of light work, *see* 20 C.F.R. § 404.1567(b); *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV.c., def. of "L-Light Work." The DOT is available at http://www.oalj.dol.gov/libdot.htm (last visited 20 Aug. 2012).

## II.    DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g.*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## B.     Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed because of errors in her evaluation of opinion evidence, determination of plaintiff's credibility, determination of plaintiff's RFC, and consideration of the VE's testimony. Each of these portions of the ALJ's decision is examined in turn below.[2]

## C.     Evaluation of Opinion Evidence

Plaintiff challenges the weight given by the ALJ to the opinions of her treating orthopedist, Albert W. Marr, M.D., and certain related opinions. The court will address the opinions after a review of applicable legal standards.

### 1.     Applicable Legal Standards

The Regulations provide that opinions of treating physicians[3] on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2)[4]; *see Craig*, 76 F.3d at 590; *Ward*

---

[2] Other arguments made by plaintiff are subsumed in those addressed below or do not otherwise merit separate discussion.

[3] The same provisions apply to the opinions of psychologists.

[4] Citation is to the version of the regulation in effect at the time the ALJ issued her decision, 27 November 2009.

*v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996). The reason is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of . . . [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). If the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, and any specialization of the provider. *Id.* § 404.1527(d)(2)-(6). An ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see* 20 C.F.R. § 404.1527(f)(2)(ii). Although health care providers other than physicians, such as a physical therapist, are not deemed an "acceptable medical source" under the Regulations, as is a physician or psychologist, the same factors used to evaluate the opinions of physicians can appropriately be used to evaluate the opinions of such providers. 20 C.F.R. § 404.1513(d)(1); Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *4-5 (9 Aug. 2006). Notably, however, opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See id.* § 404.1527(e); Soc. Sec. R. 96-5p, 1996 WL 374183, at *2, *5 (2 July 1996).

## 2.    Opinion Evidence at Issue

Dr. Marr treated plaintiff from 2005 until at least May 2008 for problems with her right ankle. *See* Tr. 196-208; 229-71; 344-51. The treatment consisted of arthroscopic surgery on the ankle in April 2005 for fractures associated with a work-related injury plaintiff suffered in 2004 and subsequent care for pain and other problems with the ankle.

Three opinions by Dr. Marr are in issue. In a note dated 20 October 2006, Dr. Marr found her capable of medium work. Tr. 254. Second, in the same note, he found her to have a 40% impairment of her right foot based on her ankle condition. Tr. 254. Third, in a note dated 12 February 2008, Dr. Marr opined that plaintiff could not find employment. He stated, "[a] question is given her permanent restriction she is unable to be hired and therefore I think it will be difficult for her obtain gainful employment secondary to her permanent restrictions." Tr. 344. The court finds that the ALJ's assessment of these opinions was lawful.

The ALJ gave Dr. Marr's opinion that plaintiff could perform medium work "significant weight." Tr. 47 ¶ 5. She did so on the grounds that "it is supported [by] and consistent with the objective evidence as a whole." Tr. 47 ¶ 5. Because the ALJ's decision contains a detailed and comprehensive review of the objective evidence, the ALJ's explanation makes clear the basis for her attribution of significant weight to this opinion of Dr. Marr.

As to Dr. Marr's 40% impairment rating of plaintiff's right foot, the ALJ stated that "he failed to provide any medical evidence/objective findings to support his conclusion other than the fact that the claimant did not wish to proceed with more aggressive treatment." Tr. 47 ¶ 5. This statement makes clear that the ALJ did not attribute much weight to this opinion and the basis for this determination.

The ALJ stated that she accorded "minimal weight" to Dr. Marr's opinion that plaintiff would have difficulty finding employment. Tr. 47 ¶ 5. She gave four reasons for this determination: it is inconsistent with his clinical findings such as full range of motion, normal reflexes, and good motor strength; Dr. Marr stated he was unsure of the etiology of plaintiff's pain; her x-rays were negative for bony pathology; and the opinion concerns a vocational factor outside Dr. Marr's area of expertise. Tr. 47 ¶ 5.

Plaintiff argues that the ALJ erred by not addressing as part of her assessment of Dr. Marr's opinions the opinions of a physical therapist with which he stated he agreed. After careful consideration of the standards applied by the ALJ and the evidence of record, the court finds no error.

As reviewed by the ALJ in her decision (Tr. 47-48), physical therapist Linda Sain, MPT (*i.e.*, Master's in Physical Therapy) performed a functional capacity evaluation of plaintiff on 22 May 2007 as part of the workers' compensation case arising from her ankle injury. Tr. 279-89. In her report on the evaluation, Sain found, among other things, that plaintiff's "present physical capacity is medium for certain activities . . . and less than or equal to light for all other activities." Tr. 288-89. In a supplemental declaration dated 8 August 2007 requested by plaintiff's representative in the workers' compensation case, Sain stated that limitations in standing and walking precluded plaintiff from "the performance of light work . . . and could markedly reduce her ability to perform even sedentary work." Tr. 330. On 19 September 2007, Dr. Marr signed a statement, included in a letter by plaintiff's workers' compensation lawyer to him, indicating that he agreed with the evaluation and physical recommendations by Sain in her report and declaration. Tr. 192.

The ALJ made clear the weight she accorded Sain's opinions and the basis for them. She noted that Sain examined plaintiff only once and therefore lacked a longitudinal relationship with her. Tr. 48 ¶ 5. She explained that she accorded "greater weight" to Sain's opinions in the May 2007 report than in the August 2007 declaration because: Sain relied heavily on plaintiff's complaints; the restrictive RFC in the declaration is "inconsistent with the claimant's presentation upon routine examination, her treatment history, and her ability to engage in activities of daily living"; and the opinion in the report that plaintiff could do light and medium work is "supported by the objective evidence of record including the clinical examination finding[s]." Tr. 48 ¶ 5.

The ALJ also noted that Sain's report and declaration were not prepared for treatment, but at the request of plaintiff's representative in the workers' compensation proceeding to generate evidence for that case, which is not subject to Social Security standards. Tr. 49 ¶ 5. She further expressed concern that the declaration did not result from the development of additional clinical evidence and appeared to be part of an effort to achieve consistency among plaintiff's workers' compensation evaluators.[5] Tr. 49 ¶ 5.

The court finds that the ALJ's analysis of Sain's opinions comports with the Regulations and is supported by substantial evidence. Thus, although the ALJ did not discuss Sains' opinions in the context of their having been agreed to by Dr. Marr, her decision does contain a thorough and lawful exposition of her assessment of those opinions.

Moreover, the same considerations relied on by the ALJ would have applied if the ALJ had recognized Sain's opinions as agreed to by Dr. Marr, except for the finding regarding Sain's lack of a longitudinal relationship with plaintiff. It is apparent, though, that even if Dr. Marr's

---

[5] Although plaintiff argues that the ALJ misunderstands the nature of the workers' compensation system, the court cannot say that she erred in considering the nature of the proceeding in which evidence before her was generated and the possible impact it could have on such evidence, as she did.

longitudinal relationship with plaintiff were considered, the ALJ's conclusions regarding Sain's opinions could not reasonably be expected to change. Indeed, the ALJ's analysis of Sain's opinions reflects many of the same considerations that underlie her analysis of the opinions of Dr. Marr himself. Although the opinions of Dr. Marr as a physician, unlike those of Sain as a physical therapist, could be accorded controlling weight under the Regulations, it is clear based on the ALJ's analysis of Sain's opinions that she would not have given them such weight even if treated as agreed to by Dr. Marr.

In sum, the ALJ's assessment of the opinions of Dr. Marr is based on the proper legal standards and supported by substantial evidence. The court accordingly rejects plaintiff's challenge to this portion of the ALJ's decision.

### D.    Determination of Plaintiff's Credibility

Plaintiff contends that the ALJ did not properly evaluate the credibility of her allegations of limitations arising from her impairments. She further contends that in assessing her credibility, the ALJ violated her duty to remain impartial. Based on its careful review of the ALJ's decision and the evidence of record, the court finds that the ALJ committed no error.

Plaintiff's allegations include those in her testimony at the hearing. She testified that she is not able to work because of her limited ability to sit, stand, and walk without rest due to her ankle problems. Tr. 63-66. Specifically, she states that she can stand for only 5 minutes at a time or sit for 30 to 60 minutes before needing to sit or lie down. Tr. 63-66. She said that if she is on the ankle for about an hour or more, she will attempt to relieve the pain and swelling by sitting or lying down and elevating her leg with several pillows. Tr. 81. She testified that she needs to sit down and rest while doing housework. Tr. 65-66. She further testified that she attends church weekly and leads a congregational song on Sunday as music director, but does not

partake in any other activities outside of the home. Tr. 65, 67. She testified that she walks on a Nordic Track on a "sporadic" basis, trying to spend at least 10 to 20 minutes on it at least 3 times a week. Tr. 75.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id.* at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "'specific reasons'" for that finding that are "'supported by the evidence.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)); *see also* 20 C.F.R. § 404.1529 (setting out factors in evaluation of a claimant's pain and other symptoms).

Here, after reviewing comprehensively the medical evidence, plaintiff's hearing testimony, and other evidence of record, the ALJ made the step-one finding that plaintiff's "medically determinable impairment could reasonably be expected to cause some of the alleged symptoms." Tr. 45 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not entirely credible. Tr. 45 ¶ 5. The ALJ stated specifically that statements by plaintiff "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 45 ¶ 5; *see also* Tr. 45 ¶ 5 ("The undersigned concludes the testimony of the claimant is not fully credible concerning the severity of her symptoms and the extent of her limitations.").

The ALJ provided numerous specific reasons for her credibility determination. Tr. 45 ¶ 5. She noted first that plaintiff's medical records fail to show "strength deficits, circulatory compromise, neurological deficits, muscle spasms, atrophy or change in weight, which may be reliable indicators of long-standing, severe or intense pain, and/or physical inactivity." Tr. 45 ¶ 5. The ALJ also found that the records do not show plaintiff ever to be in acute distress. Tr. 45 ¶ 5. In addition, she found that the medical evidence does not corroborate plaintiff's complaints of medication side effects and that there is no objective evidence demonstrating a requirement for leg elevation. Tr. 45 ¶ 5.

The ALJ also noted that although surgical options are available to plaintiff, she has refused to undergo any further surgeries. Tr. 45 ¶ 5. She also pointed to the lack of hospitalization of plaintiff or her receipt of alternative treatments, including physical therapy, biofeedback, or pain clinic visits. Tr. 45 ¶ 5. In addition, the ALJ noted that plaintiff has not been prescribed strong pain-relieving medication and takes only over-the-counter pain medications. Tr. 45 ¶ 5. The ALJ found this overall "extremely conservative course of treatment" to be inconsistent with plaintiff's allegations of very limiting pain. Tr. 45-46 ¶ 5. So too, she stated, was plaintiff's failure to show up at several orthopedic appointments. Tr. 46 ¶ 5.

The ALJ also relied on plaintiff's ability to perform a significant range of activities of daily living. Tr. 46 ¶ 5. More particularly, she found that plaintiff is able to "care for personal hygiene independently, care for pets, prepare complete meals, do household chores, laundry, walk to the mailbox, exercise regularly on a treadmill and NordicTrack, watch television, read, work in the flower garden, visit with family and friends, use the computer, manage her finances, drive, run errands, shop for groceries and household items, and attend church and be very active

in her church choir." Tr. 46 ¶ 5. The ALJ viewed such activities as "inconsistent with complaints of disabling limitations." Tr. 46 ¶ 5.

The ALJ specifically rejected plaintiff's testimony minimizing two prior statements she made. Tr. 46 ¶ 5. One was to a treating physician of hers in June 2009 that she exercised on a Nordic Track "regularly" (Tr. 364); she testified that she used it on a "sporadic" basis (Tr. 75). The other prior statement was to a psychologist in the workers' compensation proceeding in August 2008 that she was music director of her church and her family was very active in the church choir (Tr. 372); she testified that there was no choir and she simply led the congregation in a song on Sundays (Tr. 66-68). Plaintiff challenges the ALJ's rejection of this testimony.

The ALJ explained, however, that the earlier statements to the health care providers "are supported by the objective medical evidence, including normal physical examination findings, and consistent with the medical evidence as a whole." Tr. 46 ¶ 5. The ALJ also noted, in effect, that plaintiff's earlier statement to her physician had the assurance of veracity that it was made "to a medical professional attempting to alleviate pain and restore function." Tr. 46 ¶ 5. The ALJ further pointed to the affirmative nature of the statements to the physician and psychologist—describing what plaintiff could do—rather than the negative nature of the testimony—describing what plaintiff could not do—to distinguish the two sets of statements. The court concludes that in not crediting these portions of plaintiff's testimony the ALJ was acting lawfully within her role as fact finder.

Plaintiff contends that particularly in addressing the Nordic Track and music director issues the ALJ showed herself to be acting improperly as an advocate against plaintiff, rather than a neutral decision maker. The court disagrees. The ALJ was, indeed, candid with plaintiff about her concerns over what she saw as inconsistencies between plaintiff's prior statements

regarding these issues, but she thereby gave plaintiff the opportunity to provide clarification. *See* Tr. 66-80. The mere fact that there are explanations for perceived inconsistencies in plaintiff's statements other than lack of credibility is certainly not evidence of bias. The ALJ's task is to determine which among such alternative explanations is accurate. The court concludes that the ALJ was acting within the scope of her duty to inquire about perceived inconsistencies in the record. The thorough, well-supported nature of the ALJ's decision substantiates her lack of bias against plaintiff.

Plaintiff also argues that the ALJ could not properly reject plaintiff's claim that she needs to elevate her right leg to control pain and swelling in her ankle based on the finding that "no objective evidence" supports the claim. *See* Tr. 45 ¶ 5. Plaintiff cites to the recommendation for leg elevation in Sain's declaration (*see* Tr. 330) and Dr. Marr's agreement with Sain's recommendation. Plaintiff focuses on this evidence regarding leg elevation because, as discussed below, the VE testified that a hypothetical person who otherwise had plaintiff's attributes could not perform the three jobs the VE said such a person could perform if she also needed to elevate her leg as plaintiff's counsel posited. Tr. 86. Plaintiff's challenge to the ALJ's leg elevation determination has no merit.

As the ALJ explained in her discussion of Sain's opinions, Sain relied on plaintiff's own statement that she needed to elevate her right leg. Tr. 48 ¶ 5; 283. Dr. Marr cited to no objective evidence (or any findings at all) in his statement of agreement with Sain's recommendations. *See* Tr. 192. Thus, the purported requirement for leg elevation is not, in fact, based on objective evidence, as the ALJ found. The lack of supporting objective evidence and the other factors bearing on plaintiff's credibility generally that are cited by the ALJ are sufficient to support her rejection of the alleged leg elevation requirement.

Moreover, in his hypothetical to the VE, plaintiff's counsel posited the need to keep the right leg elevated for a half hour after standing for up to an hour. Tr. 86. Plaintiff, though, did not specify a length of time she required her leg to be elevated (*see* Tr. 81) and Sain recommended that it be elevated "as needed" (Tr. 330). Thus, to the extent that plaintiff argues that the leg elevation requirement entailed elevating it for half an hour, the lack of evidence supporting this period of elevation further bolsters the ALJ's rejection of the leg elevation requirement.

Another error plaintiff alleges is that the ALJ should have discussed as part of her credibility determination the evidence that plaintiff suffers from an undifferentiated somatoform disorder or a pain disorder associated with both psychological factors and a general medical condition.[6] This diagnosis was made by psychologist Verne Schmickley, Ph.D. in a March 2008 evaluation of plaintiff in the workers' compensation proceeding (Tr. 354 ¶ 1), supplemented in a June 2008 addendum (Tr. 360 ¶ 1). He also opined that there were no psychological contraindications preventing plaintiff from work and, indeed, increased vocational activity for plaintiff could be therapeutic. Tr. 355 ¶ 7; 361 ¶ 5. Another psychologist, Antonio E. Puente, Ph.D., who evaluated plaintiff in August 2008 for the workers' compensation proceeding, similarly diagnosed plaintiff with chronic pain syndrome in his initial report (Tr. 373) and stated his general agreement with Dr. Schmickley's in a November 2008 addendum (Tr. 376). However, unlike Dr. Schmickley, Dr. Puente opined that "the likelihood for [plaintiff's] return to gainful employment is negligible at best." Tr. 376.

---

[6] Undifferentiated somatoform disorder is characterized by frequent physical complaints that cannot be fully explained by any known general medical condition or are grossly in excess of what would be expected from the person's known condition and that cause clinically significant distress or impairment in functioning. *See Diagnostic and Statistical Manual of Mental Disorders*, "300.82 Undifferentiated Somatoform Disorder," 490-92 (4th ed., Text Revision (2000) ("DSM-IV-TR")). Pain disorder is characterized by pain that is the primary focus of the person's clinical presentation and that causes significant distress or impairment in functioning. *Id.*, "Pain Disorder," 498-503.

The court finds no error in the ALJ's handling of this evidence, as plaintiff alleges. The ALJ discussed Dr. Schmickley's and Dr. Puente's opinions in detail, in both her step 2 analysis and analysis of plaintiff's RFC, of which her credibility determination is a part. Tr. 40 ¶ 3; 48 ¶ 5; 49 ¶ 5. She stated that she gave "substantial weight" to Dr. Schmickley's opinions and concurred in his conclusion about the absence of psychological impediments to plaintiff's returning to work based on his finding at step 2 that plaintiff's "mental impairments do not result in functional limitations." Tr. 48 ¶ 5. She gave Dr. Puente's conclusion about plaintiff's inability to return to work "little weight," finding it inconsistent with plaintiff's moderate depressive symptoms and mental status examination. Tr. 48 ¶ 5. The ALJ's demonstrated detailed attention to Dr. Schmickley's and Dr. Puente's opinions belies the notion that she somehow disregarded them in her credibility analysis. Indeed, the ALJ's findings regarding plaintiff's credibility are sufficiently broad to encompass plaintiff's undifferentiated somatoform disorder and pain disorder. In addition, the ALJ indicated in her decision that, in effect, she considered all the evidence in making her credibility determination. Tr. 45 ¶ 5 (prefacing her statement of the RFC determination with the phrase, "After careful consideration of the evidence"). Lastly, it was not essential that the ALJ discuss plaintiff's somatoform disorder or pain disorder expressly in her credibility analysis.[7] *See Lemacks v. Astrue*, 2008 WL 2510087, at *6 (D.S.C. 29 May 2008) (holding that the ALJ is not required to discuss every piece of evidence in the record); *see also Kozel v. Astrue*, 2012 WL 2951554, at *3 (D. Md. 18 July 2012) (noting that the ALJ's explanation is sufficient if the reviewing court can discern what the ALJ did and why).

---

[7] Notably, despite her arguments about the importance of her somatoform disorder and pain disorder to the ALJ's credibility analysis, she does not challenge the ALJ's determination at step 2 that these impairments are not severe.

In addition, plaintiff criticizes the ALJ's findings that she declined surgery for her ankle, "had not been prescribed strong pain relieving medications," and took only over-the-counter medications for pain. Tr. 45 ¶ 5. Plaintiff contends that these findings are in error because she takes prescription pain medications, including Arthrotec, gabapentin, and Percocet. Tr. 193, 364. Arthrotec, however, is an anti-inflammatory and not a narcotic pain medication.[8] Further, it appears that plaintiff was prescribed gabapentin not for ankle pain relief, but for a shingles outbreak. Tr. 366. And while there is a form in the record in which plaintiff reports being prescribed Percocet (Tr. 193), there does not appear to any other documentation of her use of Percocet in the medical records aside from post-surgery treatment in 2005. Tr. 202, 241. Nevertheless, even if plaintiff did take prescribed medications in part for pain, the contrary finding by the ALJ would constitute harmless error and her credibility determination would remain supported by substantial evidence in light of the numerous other factors and large body of medical records and other evidence upon which she based her determination.

Notwithstanding plaintiff's contentions, the ALJ's RFC determination does reflect the physical and mental limitations about which plaintiff complained. Indeed, the ALJ specifically stated that while she did not fully credit all of plaintiff's complaints, she "accorded [plaintiff] the benefit of the doubt and reduced the [RFC] because of some measure of subjective pain to include significant limitations from the amount she can walk, finding that she can only walk for thirty minutes at a time because of her allegations that pain occurred on extended walking." Tr. 50 ¶ 5. In addition, she limited plaintiff to SRRTs because of her allegations of difficulty concentrating and staying focused. Tr. 49 ¶ 5.

---

[8] *See, e.g.*, Arthrotec website, http://www.arthrotec.com/about-arthrotec.aspx (last visited 21 Aug. 2012).

For all of these reasons, plaintiff's challenge to the ALJ's credibility determination is based on the proper legal standards and supported by substantial evidence. The court therefore rejects plaintiff's challenge to it.

### E.    RFC Determination

Plaintiff contends that as a result of the purported flaws in the ALJ's assessment of the opinion evidence and evaluation of plaintiff's credibility, the ALJ's RFC determination is erroneous. As discussed, plaintiff's challenges to these aspects of the ALJ's decision are meritless. Plaintiff's challenge to the RFC determination therefore also fails. The ALJ's RFC determination is based on applicable legal standards and supported by substantial evidence of record.

### F.    Reliance on VE Testimony

Lastly, plaintiff argues that the ALJ could not properly rely on the VE's testimony that there are jobs available to a person with plaintiff's attributes because the ALJ's hypothetical did not include all her limitations, most significantly the limitation that she must elevate her right leg after standing. Plaintiff's contention fails.

To be helpful, the VE's opinion must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005); *Baker v. Astrue*, No. SAG-10-145, 2012 WL 12751, at *4 (D. Md. 3 Jan. 2012) (rejecting plaintiff's objections to the ALJ's hypothetical to vocational expert where "the hypothetical presented to the VE [vocational expert] was supported by substantial evidence and adequately included all the

limitations that were deemed credible by the ALJ"). The VE must accept as true the RFC as determined by the ALJ. *Hines v. Barnhart*, 453 F.3d 559, 566 n.5 (4th Cir. 2006).

In this case, the hypothetical presented to the VE by the ALJ did adequately reflect the plaintiff's RFC as determined by the ALJ. Tr. 84-85. Therefore, the ALJ could properly rely on the VE's testimony based on that hypothetical stating that there are jobs in significant numbers in the national and local economies that an individual with the limitations described could perform. Tr. 85.

In his hypothetical to the VE, plaintiff's counsel included the limitation that the hypothetical individual needed to elevate her right leg for 30 minutes after standing up to an hour. Tr. 86. The VE testified that this additional limitation would preclude the identified jobs. Tr. 86. Because the ALJ properly found the leg elevation limitation inapplicable to plaintiff, she properly did not rely on the VE's testimony based on it. The court accordingly rejects his final challenge by plaintiff to the ALJ's decision.

## III.   CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is supported by substantial evidence and conforms to the applicable legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 31 August 2012 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except

upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 7 days after service thereof or 7 September 2012, whichever is earlier.

This, the 21st day of August 2012.

James E. Gates
United States Magistrate Judge